judge Cndeiuvoob,
delivered the opinion of (he court.
The validity oí the ioliowing entry constitutes the principal question in the cause. ‘John Larue enters twenty one thousand acres, &c. to begin at Lloyd’s fork, at the loot of the knobs above Brashear’s station, and on the north side of the knobs and the lower side of said iork, and to run along the north side of the knobs to the trace leading from the salt works to the falls, thence up Floyd’s fork and the trace, till a line to run across from the said fork to the trace will include the quantity of vacant land exclusive of prior claims; February 3rd, 1783.” Floyd’s fork and Brashear’s station at the date of the entry, and for some years Before, were objects of notoriety. Within less than a half a mile above the station, the knobs extending east and west bind on Floyd’s fork. Hence there would be no difficulty in going to the beginning of the entry. Any subsequent locator could ascertain its position without mistake or difficulty, upon reasonable exertion. When at the beginning, the entry directs to run “along the north side of the knobs to the trace leading from the salt works to the falls;” pursuing the direction, a person would be led to the trace which passes the knobs at the place marked on the map as the blue lick gap. This is the first trace which would be met with, and it is satisfactorily shewn by the proof that it was notorious at the date of the entry, as the trace leading from Bullitt's Kelt to the falls tf Ohio, If Bullitt's lick can be considered synonymous with “salt works” as used in the entrv, and the falls of Ohio had obtained such notoriety and distinction as to have ac *190 quired the appellation of the falls, then, to a person acquainted with these parts, the entry would have pointed out with great certainty the trace intended. That the falls of Ohio were well known at Bra-shear’s station at the date of the entry, and would have been understood in common conversation by the appellation the falls, we cannot doubt. The term fall or falls, is usually applied to a rapid or cataract in a water course. The magnitude of the Ohio, the obstructions to its navigation, and the perpendicular descent of water over parts of the strata of rock which lie across the stream, were well calculated to give the name of the falls by way of distinction to the rapids of that river. When we advert to well established historical facts, and which,judicially, we will notice, and reflect that the falls of Ohio was one of the most important points in the early settlement of Kentucky as a landing for emigrants, and the head quarters of the little army of state troops commanded by general Clark, prior to the date of the entry, we think there can be no doubt the term" Falls, as used in the entry, was as well understood as it would have been if the words Falls of Ohio had been used, and that, the same place was pointed to and meant by either expression. That salt was made at Bullitt’s lick at an early period for the supply of settlers with that necessary article, is likewise a well established historical fact. Indeed, Marshall in his history of Kentucky has noticed the fact, that the lick or salt' spring derived its name from captain Bullitt, who discovered and surveyed it as early as 1773. The trace leading from Bullitt’s lick, therefore, to the Falls, might well be called a trace leading from the saltworks to the Falls, and in reference to the other objects of the entry, viewing them in connexion, a subsequent locator would pronounce with certainty that he had reached the trace intended on arriving at Blue Lick Gap. In argument, it was contended that the foregoing reasoning in respect to the trace was equally applicable to that which led from Man’s lick to the falls. There would be weight in this, if the trace from the salt works had not been connected with the knobs extending from Floyd’s fork west. The road marked on the platt as crossing Floyd’s fork at X going to. Mean’s lick, shews that the sitúa- *191 íion of that lick. Í3 such, as (o render a trace from it in a direction to the falls incompatible with the calls of the entry which points out the trace intended, as situated to the west of Floyd’s fork, and to be by going from, said fork along the north side of the knobs. No other trace than that claimed by the ap-pellees at all answering the description has been shewn. We think it pointed out with sufficient certainty. Floyd’s fork, the trace, and the knobs, being pointed out, there could be no doubt or difficulty in ascertaining with precision the boundary of the twenty one thousand acres appropriated by the entry, but for the expression “exclusive of prior claims.” The locator clearly intended to extend Ins survey up Floyd's fork and the trace, so as to include twenty one thousand acres of vacant land without counting the acres appropriated by prior claims which might be embraced by the survey. The expression “ex-elusive of prior claims,” indicates that there were claims of that description, but whose they were or where situated, is left altogether uncertain by the entry. io impose the labor ol ascertaining the sitúation and extent of prior claims upon a subsequent locator, when no data has been furnished to enable him todo it,has been repeatedly adjudged unreasonable, The entry, therefore, cannot be good for any land except twenty one thousand acres, laid off by runing up tlie trace and fork from the knobs so far as to include the quantity, without allowing for prior claims.
r_ which ealls^ior a" certain nnm-«exclusive8 of prjor claims,” but, eiu’B no databy which tlle fi10se claims can be ascer-ta!ned by a locator, is valid only for ^® forinciwi. ing prior c'aims-
In an entry, a cali ex" olaims»°r when the base and side lines or boundary are given, will not invalidate the entry lor the quantity spe-eified when laid off adjoining the base within the side lines.
*191 It is contended by the appellants that .the call [0 exclude prior claims, without designating the claims intended to be excluded, vitiates the whole entry. In the case of Horine's heirs vs. Craig, &c. III Marshall, 588, an entry referring to “prior claims, without specifying them, was considered and adjudged bad for uncertainty. This case reviews the principles of the various decisions which bear upon the present entry, and it would seem from the general reasoning of the case, that all entries professing to avoid prior claims without describing their position for the information of subsequent locators were invalid for want of specialty. If this be the general rule, there is at least one well settled exception to it. The call to exclude prior claims, where the base and side lines or bound ariesare given, will not vitiate soasto destroy *192 tiie validity of the entry for the quantity specified', when laid off adjoining the base within the side lines. See Overton and Reed vs. Roberts, IV Bibb, 154, Gorum, &c. vs. Renfroe’s heirs, II Mar. 395. These ca^es bear a striking analogy to (he present. Here the knobs constitute the ba.-c. Floyd’s fork and the trace are the side boundaries. We are of opinion that the entry is valid for twenty one thousand acres laid off next to the knobs, and binding on Floyd’s fork, and the (race, equal distances, when reduced to a straight line. We deem it unnecessary to point out the differences between the entries decided upon in those cases cited in argument, and relied on by the appellants, and the entry in the present case. The case of Horine’s heirs vs. Craig, takes sufficient notice of (he principles and cases relied on, and an attentive examination will shew the points of dissimilarity.
Call, in an entry, to exclude “prior claims,” con-si rued to mean such claims only as are legal and valid.
It is contended, as the claim of the appellants was surveyed before the date of the entry set up by the appellees, that the call to exclude, “prior claims” must be taken as excluding the land claimed by the appellants from appropriation under the entry. This idea is plausible, but wo think, whenexamined, is not sound. The “prior claims” intended, could not mean surveys, for these constitute no appropriation of land, unless authorized and sustained by a valid entry. The expression must be construed to embrace every species of claim, no matter how vague, and no matter whether it be surveyed or not, or it must embrace such claims only, as were legal and valid. We suppose the locator meant and intended such claims as were, valid in law, and only such, for to these alone was he bound to yield. All the land not covered by valid claims, was strictly speaking vacant; and there is nothing in Larue’s entry, indicating an intention to exclude vacant latid. According to this interpretation, the claim of the appellants was not excluded by the entry of (he appellees.
It was said in argument, that the appellants had’' two claims, covering in part the same ground. This would seem to ho the fact from the connected piati, but the patents are not filed, although the record contains an agreement that they might be filed in *193 this court for the first time. It is also shewn in the agreement, that the six hundred and eighty eight acres, and one hundred and twelve acres patented to the appellants ancestor were granted in consequence of his entry for eight hundred acres, tríade the 29th May, 1780. Hence we conclude that the ancestor1 of the appellants never had any separate title to the tract laid down on the connected platt, as óne of eight hundred acres. Upon the whole case, we perceive no reason to disturb the decree.
Chapeze ¿y- Hággin, for plaintiffs; Mills, Brown 'iznd Richardson, for defendants-.
Wherefore the same is affirmed with costs-.